The next case to be argued today is 23-137 Wilson v. FBI. We have Mr. Rankin, who's reserved two minutes for rebuttal. You may proceed when you're ready. Thank you, Your Honors. May it please the Court, we're here to correct errors of law found in the fee decision for Mr. Wilson. Primarily, our issue is that Judge Aaron conducted an ex post analysis of the success of the lawsuit rather than an ex ante analysis as is proper. He uses the phrase ex ante and then proceeds to talk about the actual thing that was produced. This error in viewing how the litigation progressed permeates the decision. This FOIA request is about information regarding alleged government retaliation for an individual who made a claim that indigenous rights or, excuse me, indigenous members of a community were killed as a result of a mining operation. This is a pretty obviously very serious allegation, and he alleges that from that he suffered harm at the hands of the government. And these FOIA requests are designed to enlighten him and the community about that retaliation. As a result of the litigation, it's undisputed that five additional pages of records were produced and a note. This note is, perhaps unsurprisingly, we place a lot of weight on this note. This note, for the first time, indicates that one of the names that Mr. Wilson understands to be involved in this government, you know, retaliation, for lack of a better word, is associated with the Portland office of the FBI. And you can look at, you can see that association at Joint Appendix 101. It's undisputed that Mr. Wilson substantially prevailed in his underlying litigation. He received a judicial order to search the Delta database. The Delta database deals with human sources or confidential informants. That search, as everyone knows, returned no results. But it was found that that search would have reasonably been done. Also, there was the voluntary change in the agency position, which is that note of associated with the Portland FBI office since 1990. So that then takes us to the Piat-Trangelo, I've been working on that pronunciation, the United States case that lays out the four factors that you need to go through once you get to the point that you're a prevailing party. So the first factor here is the public benefit derived from the case. Here, up until this point, there had been no evidence that the individuals that Mr. Wilson, other than his own self-report, had any involvement with the government. And now there is. So the idea that there's no benefit from this is not true. Also, Judge Aaron asked- Well, this is exactly the issue, right? The massive, no, I mean, I'm not sitting here telling you this is game-changing, world-altering information. But that's not where the analysis needs to be. The analysis needs to be at what type of information was requested. If you look at Morley v. CIA from the District Appellate Court, which is, this is a very, I think, a very- Well, wasn't the type of information requested personal to Mr. Wilson? Well, it's, no, I mean, yes and no, I mean, really is the issue here. And this is one of the errors in this case. Judge Aaron uses this particular inquiry at point one. The inquiry of the relationship between the information and the individual is typically done at point two. And you can- Sometimes done together. Very much so. And this is, two and three typically are done together, and the first three are sometimes done together, as sort of done here. Which- It's overlap. It's logical overlap. Yes. And this really goes through, let's look at the Davey v. CIA case. Davey v. CIA at 1160. It basically distinguishes between requesters who seek public information for purposes, for their own purposes, or people who seek public information for personal advantage. Right? This is designed to separate out the data miners of the world and the people who use the person, you know, use the public information for, I'm sure that we're going to hear about Cotton from the government, for advancement of an employment case. Right? I mean, that was explicit intent. There was no intended public benefit of it. It was purely to advance its employment litigation. And I will note that Mr. Wilson does maintain, you know, a website where he talks about this. It's not a situation where he's gaining something from this for an economic purpose or another purpose. The- this is a very serious allegation against the government. I mean, the evidence of it, I think we understand, is not massive at this point. However, it is the type of information that is squarely in this public sphere. If you look at Davey and if you look at- Let me ask you this. Since Judge Kaplan didn't adopt the R&R, what exactly do you think we're doing? Judge, are you referring to the first opinion? Yes. It's the fee opinion that Judge Kaplan did- did adopt. We're not challenging the search opinion. Just the fee. Correct. And it's the weighing of these four factors which is- is our challenge. Honestly, the rest of it are- And they're not challenging the determination of statutory entitlement. Correct. Exactly. It's just the Treglio factors. Exactly. And it'd be really our request that should Your Honor find an error- honors find an error of law in how this operates, that it would be set back down for a proper weighing. And as I think maybe I've said a couple times, but I'm going to say it one more time, is it's more- it's really Morley and Davey that show how these factors are supposed to be weighed. In both of those cases, the actual resulting documents were almost nothing. It was the base of the request that had the public purpose in it. And it was not something that was done for a public- for a private benefit, a lot like a data miner or someone who's actually profiting off of this. So I'm looking at the FOIA letter, March 26, 2014, which is 8, 14, and 15. Yes. And doesn't this sort of belie the idea that this was a request for information to the public? It could have been framed as, I request disclosure of all agency records relating to the death of indigenous peoples in mining. Right. Right. But it doesn't. It says, I request disclosure of all agency records concerning, naming, or relating to me. That's the actual request. Very true. So how is that- maybe I'm being overly simplistic, but how is that not a request for information that's about him? He doesn't say, I want information released about deaths of indigenous people in mining operations. That's not the request. He has this contextual explanation in the letter. But that's not the request he makes. That might be a different situation. I'm trying to understand how, even if we take this ex-ante approach about the intent of the request, how is this intended to benefit the public instead of to inform him? Thank you, Your Honor. I very much appreciate the question. The issue is, from ACT, right, he releases this report. The thing that is in the public sphere and for the public benefit is the government's reaction to that, which is exactly the type of information that he requests. It is squarely in the public interest if there is a situation- Wait, I'm sorry. I just want to make sure I understand. The government's response to his FOIA request? No. Or the government's response to the deaths of these people? His report about the deaths of these people. The report is the nexus of this interaction. And if it is true- So why doesn't he ask for records relating to that report and the government's response to it? Well, he does in the sense of how he's having these particular interactions. Because he would have no way of knowing there was an internal document, a meeting here or a meeting there, in response to this report. The only thing that he's able to talk about and able to request is how the government is doing that around him. And it's that retaliation which, if borne out, is absolutely a matter of public discourse, right? I mean, if you have a report saying that corporations are harming indigenous people somewhere around the world and then the United States government retaliates against them for that, it's hard for me to imagine something that would have a larger public interest and public effect. I mean, that's a very serious allegation. And much like the Kennedy assassinations in both Davy and Morley, where did they get a lot? No, they sure didn't. But the thing underlying it is very much in the public sphere and for the public. So that's a theory that any request about oneself in reaction to a theory of retaliation suddenly would meet the public interest factor, even ex ante? If, as in this instance, there were actually a change in government position, both because they didn't do the searches adequately, and also the information that was provided associated with the Portland FBI office since 1990. So in this particular instance, to answer your question, no. In this particular instance, yes. There is one thing I would like to highlight. So just, you have two minutes reserved for your rebuttal. Do you want to use that now or wait until? I'd like to wait, Your Honor. I appreciate the admonition. Keep in mind the point that you wanted to make. We'll hear from- Thank you. Ms. Kovar. Good morning and may it please the court. Dana Walsh-Kamar from the US Attorney's Office for the Southern District of New York on behalf of the government. Mr. Wilson is not entitled to any attorney's fees or costs under the test articulated by this court in Petrangelo v. US Army. Three of the four factors weigh heavily- Could you please just keep your voice up just a little? Three of the four factors weigh heavily against awarding Mr. Wilson fees because the public derived no benefit from Mr. Wilson's FOIA request. The request had, the litigation had little overall effect. If we think the magistrate judge did do, failed to do an ex ante, did an ex ante, if that was an error, what then? I don't think there was an error. Magistrate Judge Aaron applied an ex ante attest. He looked at the purpose of the records and he relied on the FOIA request like Judge Miriam did. And saw that the request was for records relating to Mr. Wilson. The request itself is for records relating to him. Judge Aaron also looked at the overall effect of the litigation, which is part of that first test, and noted that only a single handwritten note was released as a result of the litigation. The other five pages that were released were largely duplicative. So they didn't actually reveal new information. And so that is appropriate under the ex ante analysis to look at the, what the records were, what the records sought, which were records about Mr. Wilson and not of public benefit. And then also the effect. What, couldn't you just end there? You could, Your Honor. But courts have articulated the second piece of the test, which is the effect of the litigation. But so if the effect of the litigation is in the public interest, even if ex ante, it was seeking individual information, how does that factor come out, wash out? So it might be neutral. I think that the way these factors work is not a, you know, courts have applied them saying, well, this factor is of marginal impact or we view this factor as being very persuasive. I think here, all three factors really weigh heavily on the side of not awarding fees. As Judge Merriam said, looking at the request itself, it's personal in nature. Mr. Rankin actually just said the requests were both personal and not commercial, I think. Remind me what the standard of review is. The standard of review, we believe, is abuse of discretion because that is the standard in any fee award case unless there was a clear error in the law that was applied, and that's not the case here. Judge Aaron looked at the patronage of the factors. He articulated them correctly. In our review, he applied the ex ante analysis that courts apply, and he did so correctly. So the review here would be whether he abused his discretion in applying those factors to the facts here. Thank you. One thing that we didn't talk about was the reasonableness of the government's conduct, and I think that here it's very clear that the FBI did act reasonably at every step of the process, the FBI responded to the request. They ended up voluntarily re-reviewing the records that had previously been produced after the commencement of the litigation, and they voluntarily. I put voluntarily in quotes since it came after the litigation, wouldn't you? After the litigation, but not pursuant to any court order. So they voluntarily re-reviewed the records, produced five additional pages that were duplicative, and the single handwritten note that we discussed, and it was reasonable at the outset to withhold that under exemptions 7C and 6 because there was a basis to believe that there was personal identifiable information in there, and it was for a law enforcement purpose. So that was reasonable at the time. To go back to the first three factors and the public benefit here, the courts, including in Cotton, have said that a broad, general, speculative public interest is insufficient to meet the test for fees. And so any FOIA request reveals non-public government documents, and so it can be said that any request by any requester will somehow reveal information about the government. That's insufficient to meet the standards set in Petrangelo and the other cases in order to for the requester to be entitled to fees. If the court has no further questions, I'll rest in our papers. Thank you, counsel. Thank you, counsel. Mr. Rankin, you have two minutes. Thank you, your honors. I think it's useful. So do you risk your views on the standard of the review? Nearly articulating the four-part test, which of course Judge Aaron did correctly, but doing everything that that test requires underneath it incorrectly, it's our position that that should be done under a de novo review. But whatever the case is, it should go back because that would also be an abuse of discretion if the test is applied in a way that it's not. I'm sorry, I'm not sure I completely followed your answer. It's partial abuse of discretion and partial de novo. What would it be? It's our position that it should be de novo. However, we believe we meet the test even if it is under the abuse of discretion standard. Based on the application, because just because you have the chapter heading correct does not necessarily mean that the chapter itself follows the law. And that's why we understand it should be a de novo review. But it's our position that it doesn't actually, isn't dispositive. I think it's useful, and a good example of this, just which I, is let's look at the language the court actually used to say, an example of the chapter title being correct. Ex ante, the assessment that the document sought by plaintiff did not add to the fund of information. Right? He has the word ex ante right there, which is, of course, correct. And then applies the documents did not add to the information. Like an affirmative statement, these documents didn't do it. Right? Which, of course, if these documents didn't do it, that's not an ex ante analysis. But there's no rule of law that drives that decision, right? It's the judge's judgment. It's that statement shows that he's not applying the ex ante analysis. If he were, he would, of course, be correct. The other piece that I think is important to look at here is. Well, just on that, counsel, but yes, he is looking to what was produced. But within the framework of what, of whether the request is to increase the public's knowledge. And there we return to Cotton and to Judge Marion's series of questions about the specific information that he was asking for, which was about himself. Well, I mean, it's about himself, but it's larger than that. Because if you get this information, it is absolutely, it has to show that government retaliation. Right? If the information is there, then necessarily you have something that is a matter of public import. Those two are not, you can't pull those apart in a way that Judge Aaron does. The, something I think. Sorry, why not? Well, because if we have a document, right, that shows, of course, very, very hypothetically, shows there's a report by Mr. Wilson. We should retaliate against Mr. Wilson because we don't like this report. And the government then takes a bunch of action on that report. How is, that's on the front page of the New York Times. Right? Is it personal to Mr. Wilson? Sure. Does it have a massive public import? Yes, also. The piece, if I may move on, I'm happy to answer more questions about that. You can wrap. Okay, very quickly, and I appreciate your honor's indulgence. The problem that we have here is where the weight goes. Right? You're, if this decision stands the way it is written, it puts the onus on the requester to essentially guess what the government's response to a FOIA litigation is. And it should not be on the requester to do that. It's the government needs to come forward, make reasonable searches, act and act reasonably in this situation. And if it is required for litigation, you can't then move all of that risk to the requester because that's really antithetical to how the FOIA law is supposed to operate. And I think it's that public policy consideration that I think I would encourage your honors to explore in the analysis of how a case like this operates. All right. Thank you to both counsel. The matter is submitted and I'll.